We'll call the first case United States v. Ramon Ochoa Ochoa. You may begin. Good morning, your honors. May it please the court and counsel. My name is Leslie Bowman. I represent Mr. Ochoa Ochoa. I did not represent him at trial. I was substituted in just before sentencing and am representing him now on his appeal. I would like to reserve two minutes of my argument time for rebuttal if it's possible. Your honors, I'll start with the issue of the indictment of whether the change in the facts at trial constituted a constructive amendment or a variance. The facts in this case are undisputed. Mr. Ochoa Ochoa was arrested on December 25, 2001, at the Douglas, Arizona, Port of Entry. However, he was indicted for entering and being found at or near Safford, Arizona, on May 30, 2002, five months later. In looking at that, it did seem to me that that is a substantial variance, particularly when the crime charged is a found-in crime, because that relates to both time and place. But my question is whether there was any prejudice from it, given that I think there was notice ten days before trial, and then there was no objection. So if you would address that, I would appreciate it. Thank you, Your Honor. And that's correct. One of the issues that concerns me the most regards his protection against double jeopardy, because if somebody goes back and looks at that indictment, they will see a person supposedly found in Safford, Arizona, on a date in May. He would not be protected if he were to be charged for either an attempt or an entry or being found in at the Douglas Port of Entry in December. There's no way to tell that those two offenses are connected in any way. I'm not – in terms of this particular trial, he ultimately gets tried on Douglas. Is that correct? That is correct, Your Honor. Those were the facts that were presented to the jury. Okay. And the double jeopardy is if they were to go back and have another trial? If he were to – if they were to ever charge him again. Right. But wouldn't that – isn't it premature to jigger this indictment in trial in anticipation of something that may never happen? Wouldn't you still have that defense at that time? Your Honor, you would still have that defense. The real problem is that the reason why felony cases need to be indicted – there's a couple of different reasons. But it's not only to give the defendant notice. It's also to protect him from any later double jeopardy. And according to Russell v. The United States, one of the other reasons for the indictment is for a person to be prosecuted on the facts that were presented to the grand jury. That's not what happened in this case. It's true that there was no formal objection to the indictment. But this issue had been being discussed with the government for months. In fact, it's the reason why the change of plea fell through in the first place, was because the defendant, Mr. Ochoa Ochoa, would not admit to being found in Safford when he claimed he was found in Douglas. And so the change of plea fell apart. But Counsel, wouldn't the short answer to an attempted second indictment be that he was in custody at that point and therefore the found in wouldn't lie under established doctrine? In other words, he had been in custody from that earlier date until the date that was referred to in the indictment, right? That's correct. Continuously. Yes. And so there's really no potential for a hazard, is there, from the positive second indictment based upon the facts that were advanced in this indictment, right? Well, Your Honor, if there were potentially a second indictment, the first indictment talks about May 30th.  If there were a second indictment, it would be for the time when he was found in December. And that's when he actually was taken into custody. What was the prejudice to your client, the immediate prejudice to your client, if any? Well, I think the immediate prejudice was that his substantial right to a presentation to the grand jury was violated because the grand jury wasn't presented with the actual facts that he was tried on, although they did receive notice 10 days before trial. Ten days before, there was no objection. But what was the actual prejudice in the trial itself? Well, I suppose some of the actual prejudice was that he wanted to plead guilty and that didn't work. And so, of course, he ended up with a higher sentence because he lost the plea agreement. By the time the report that told the real facts of when he was arrested was disclosed to him, he had lost the plea agreement. That's one thing. But I think that also it is prejudicial for him to have lost his right to have the actual facts presented to the grand jury. They may have considered charging him with an attempted entry since he claims that he was found within the port of entry as opposed to deep inside the United States. So that's all you can point to? I think those are the strongest factors aside from the fact... Time is running. Why don't you move on to another point? Okay. Thank you, Your Honor. I wanted to also discuss the Batson challenge. Your Honor, again, there's no dispute that the government struck all four of the Hispanic jurors of the Veneer people from the jury pool. And that left the jury devoid of Hispanic people. Obviously, Mr. Ochoa, Ochoa is Hispanic. The defense did make a Batson challenge based on that. And I think that the judge erred when he failed to follow the three points, the three steps that are required by Batson. The first step, as you know, is that the judge is to make a finding of whether there's a prima facie case. Then move on to step two, which is to ask the government for a race neutral explanation. The district court judge did not make a finding of whether there was a prima facie case. Isn't it implicit in asking the prosecutor to come forward with a race neutral explanation? I think it is, Your Honor. And I think that's the problem, is that he tried to go backwards after he already asked the prosecutor for race neutral answers. Or he erred maybe just in the semantics. Maybe he did move on to the third step. But we can't tell that from the record because he used the words prima facie case. Also, he determined that the prosecutor's reasoning, that her race neutral reasons, were sufficient. I dispute that. One of the reasons was that the juror was a woman, and that is specifically prohibited by the Fifth Amendment. It's a cognizable group just like race is. The other reason was that the juror was young. Although age is not a cognizable group, it has to be somehow related to the case, to the offense, to trial strategy. And it wasn't. Also, there's nothing in the record that gives us the juror's age. Was there anything in the record to deal with comparables, as normally occurs when you're dealing with a Batson, so that you look at a particular juror to whom an objection was made and then say, well, that juror had the same characteristics as jurors A, B, and C, and therefore, that suggests pretext. Was anything of that sort proposed? Well, Your Honor, obviously, some of the other jurors were women. But in terms of age, when I went through the record, we could speculate on other jurors' ages. But there was nothing in the record on anyone's specific age. And the prosecutor didn't do anything to tie the age to the concern about having a so-called young juror on the jury? No, Your Honor. Do we actually know the content, Hispanic-wise, of who was struck and who was on there? Or is that something we have to speculate about as well? The content of the jury, in terms of the jury strikes. Well, all of the Hispanic jurors were struck. Four out of the government's six strikes were used to remove all Hispanic jurors. Your Honor, if I could reserve my last few seconds. Let me ask you a couple questions. Your client was found guilty of being found in the United States? Yes, Your Honor. Exactly where was your client found in the United States? Originally, at the time of his arrest. In connection with the charge and the finding that he was found in the United States? The evidence indicated that he was found several car lengths north of an inspection station that's located approximately 150 yards north of the U.S.-Mexico border. He was on his way to Mexico at that point? Yes, he was. He was in the southbound lane. But he was in the United States when he was first spotted? Yes, he was. Thank you, Counsel. Thank you. We'll let you reserve some time for rebuttal. Thank you. Good morning. May it please the Court. I'm Beverly Anderson from the District of Arizona. I'm here on behalf of the United States. The conviction in this case should be affirmed because the evidence was sufficient. Number two, the district court properly denied the requested jury instruction. And number three, there was no Batson issue. Now, in this particular case, there was a Batson issue. There was a Batson motion made. And the district court seemed to get tangled up in its own feet in resolving the thing. There was a Batson issue that was raised. However, the district court made a specific finding that the defendant had failed to make a prima facie case of discrimination. Furthermore, after that, the court made a specific finding that the government had articulated a race-neutral reason for that strike. Are you the Anderson that tried this case? Yes, Your Honor. What gives you the authority to strike a person because she's female? Your Honor, the strike was made by counsel for the government based on youth and inexperience of the jury, of that juror. Excuse me. My main thought about her was that she was young and that she is female. The word female was used as a descriptor. Who used female? Counsel for the government did, Your Honor. That was you? That was me. Okay. And you struck this person because she was a female? No, Your Honor. I struck her based on youth and inexperience. And that's... That she is a female. I mean, I'm quoting your words. You're right, Your Honor. And that was a descriptor to describe that particular juror. It was a descriptor to say why you challenged her. Based on her youth and inexperience, she articulated that she had no family. She was single. She was not married. She had no children. She worked at Banana Republic. And all of that doesn't have to do with her age. It has to do with her youth and her inexperience in life experiences when compared to the rest of the jurors. If you look at the... Did you explain that to the judge? Well, the records... No, I mean, the question is, did you explain... I hear your argument now. Did you tell that to the judge, to the district judge? I believe I did, Your Honor. In fact, the district court made a specific finding that the government had articulated a race-neutral reason. Well, we know what the district court found. We don't have to agree with it necessarily. The question is whether the district court had a basis for that finding. The district court at the excerpts of records on page 24 made a specific finding that the strike was based on youth and not based on gender. Furthermore, the... Where did the court say it's not based on gender? In the excerpts of record on page 24. Would you read that, please? The court will find that the defendant did not establish a prima facie case for a racial challenge under Batson. In any event, the government proffered a sufficient race-neutral reason to strike juror Hinojo other than her race, that is, her youth. And I'm going to deny, and that's where the record ends. Is there anything in this record that shows her relative youth compared to the other jurors? No, Your Honor. What there is is in the government's response, counsel for the government on page 29 of the response notes that the rest of the jury was made up of generally older and retired folks who were in their mid-30s and in their 40s. Well, I read what you said as striking her because she was a young woman. My main thought about her was that she was young and that she is female. And for those reasons, which are unrelated to race, that is why I struck her. She was a young female. And it's hard for me to understand how you have the authority to strike young females from a jury. Your Honor, the strike was made based on her youth and inexperience as counsel for the government. Why are you trying to ignore your own words and that she is female? And for those reasons, those reasons, which are plural, I struck her. We're not suggesting you're biased against females, but the question is why did you say female at all? It was a descriptor to describe that particular juror. You could have said she was Hispanic and young. Would that have been okay? No, I don't think so. So what's the difference between saying she's female and young in terms of the constitutional analysis? Well, gender is a protected class as well as race. Correct. You struck her because she was a young female. Counsel for the government struck her because of her youth and inexperience when compared to the rest of the panel members. Denial is also a river in Egypt. I'm sorry, Your Honor. What explains the sloppy indictment? Well, Your Honor, the indictment, what happened at trial is a non-fatal variance. The defendant was arrested on December 25th, 2001 in Douglas, Arizona. You moved to amend the indictment, didn't you? I did, and that was denied. That was denied. And were you out of time in terms of going back to a grand jury for a new one? Actually, the defendant did not challenge the indictment pre-trial. That's not the question. The question is, were you out of time? We were at trial, yes. There was no time to go back and supersede the indictment. The defendant was in a long line of cars at the Douglas port of entry when the defendant was apprehended. Furthermore, in this case, the evidence was sufficient to sustain a conviction. The defendant stipulated that he was an alien, that he had previously been deported from this country, and third of all, that he had no permission to enter the country. What was the issue then? The only issue in trial was whether or not the defendant had been found in this country. And the evidence at trial was uncontroverted that the defendant was in a long line of cars in a lane exiting into Mexico. The defendant was approximately 150 yards north of the border itself. To the extent that the defendant is claiming on appeal that he was merely presenting himself at the border for purposes of making application to properly enter the country, to legally enter the country. There was no evidence of that effect at trial. In fact, there's evidence to the contrary. One of the border patrol agents testified that if the defendant had done that, he would have been escorted to the administrative offices and also would have been escorted back. So the evidence at trial was uncontroverted that he was clearly within the United States. Could I go back for a second to the indictment question? Had jeopardy attached at the time that you filed the motion to amend the indictment? Or was that before jeopardy attached? It was before jeopardy attached, Your Honor. So then what prevented you at that point from saying, oops, let's go back to the grand jury and present it with the facts as we all know them now. And therefore proceed on an indictment that charge found in at an appropriate time. Your Honor, actually, jeopardy had attached because the defense raised the issue for the first time after the government had concluded its case. And that was after the jury had been sworn, and thus jeopardy did attach. No, my question had to do with when you filed the motion for amending the indictment, that occurred earlier, did it not? It did not, Your Honor. It occurred after the defendant had pointed out the issue to the court, and that was after the government had concluded its case. So you're saying jeopardy had attached at that time. Yes, Your Honor, it had, just because of the time when the defense had raised the issue. Next, it's the district court properly denied the jury instruction based on the evidence that was presented at trial. Back to the Batson issue, just for a brief moment. Counsel for the government made the strike. When you read the record in its entirety, it's evident that the strike was made on youth and inexperience, and was not based on race. It's important to note that the defense never challenged any of the other strikes that were made by the government. The defense only challenged the strike of this one particular jury. But what does that matter? It matters because defense has been articulating that the government struck all of the Hispanic jurors. That was never raised in the lower court. The court never addressed that issue. The record was never developed as to that. But if this other strike doesn't meet the three-part test, it shouldn't matter whether or not they move to address the Hispanic issue, correct? I mean, each one stands on its own. Each one stands on its own. However, throughout the briefs, in fact, here today in oral argument, defense counsel has articulated that the government struck all of the Hispanics. That's not borne out in the record. That was never addressed in the record. Finally, one final point, too, is that the defense never articulated or never raised an issue at trial regarding striking the juror based on gender. It was exclusively on race. Thank you very much. Let me just ask you one question. You had a plea agreement worked out in this case at one point. Is that right? We did initially. However, at the change of plea, the defendant could not provide the factual basis. And that's at- Could not provide the factual basis because of the problem with the indictment in terms of where it alleged this happened? No, Your Honor. At excerpts of record, page 10, if you look at that, the defendant is denying that he was in the United States. On page 10, he was saying, I was coming across to check on the probation there in Safford, but I wasn't in the United States. I was right on the border. I was not crossing, and I was actually working already in Mexico at the time. The defendant was unwilling to provide the elements necessary for the change of plea. So he was denying the found in element? Exactly, exactly. So then he offered to go forward with a plea later on, and you refused? The plea that he offered to go ahead with later on was substantially different than that which was originally offered to the defendant. He had offered to plead to something even less than what he was originally offered. And counsel for the government was unwilling to allow him to do that at that time. Thank you, counsel. I need to point out to the court that the district court disagreed with my assessment regarding the reason for the change of plea not going through. And that can be found at supplemental excerpts of record, page 46. Thank you. Thank you, counsel. You may respond. Just briefly, Your Honors, I wanted to point out that when the government referred to the excerpts of record, page 10, she began halfway through Mr. Ochoa Ochoa's answer at the change of plea. It starts out on line 13 where he says, well, I was found in Douglas.    I was not crossing the border. I was crossing the line. What I was doing, I was coming across to check on the probation there in Safford. Then he says he wasn't in the United States. There was- So he's denying the factual basis? Well, he did say he was found in Douglas first. And then he says he wasn't. It went back and forth. And there was some confusion as to whether he admitted being in the United States or not. In the end, at the time of sentencing, the district court gave him three levels down in the sentencing guidelines for acceptance of responsibility, even though he went to trial, based on some of these statements at the change of plea that he admitted that he was in Douglas and crossing the line. So that cuts away one of the points that you made on direct about prejudice, does it not? I'm sorry, about what? You made a point in the original argument about prejudice to the defendant consistent with the notion that he received a more severe sentence. But if he got acceptance of responsibility, despite going to trial, which has always seemed to me to be a, well, never mind the side comment, he really did not suffer prejudice in that sense, did he? Well, he lost what he would have received as four more levels down for the plea agreement if he had signed it in addition to the three levels for acceptance. But that depended on whether there was a deal or not, right? That's true, Your Honor. Thank you. Your Honor, the only other thing I wanted to point out was that in the government's response brief, there is a lot of talk on this Batson issue about the youth and inexperience, but that wasn't articulated at trial. It wasn't discussed in any way in terms of the inexperience, and as Your Honor's pointed out, this juror made very few responses. Actually, the only positive response she made was that she had previous jury experience in a drug case, and there was a guilty verdict. Other than that, all she gave was some biographical information. And unless Your Honors have any other questions, that's all I have. Thank you, counsel. Thank you both. The case just argued is ordered submitted, and we'll be in recess until the clerk advises us that we're ready to go with the Chinese delegation and the translation system. Thank you.
judges: Trott, McKeown, Shadur